## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CHAD FENLEY DAVIS, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-12-2919 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| *Respondent*. | § | |

### MEMORANDUM OPINION AND ORDER

State inmate Chad Fenley Davis, represented by counsel, filed a section 2254 habeas petition challenging his capital murder conviction and life sentence. Respondent filed a motion for summary judgment (Docket Entry No. 8), to which petitioner filed a response (Docket Entry No. 9).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this case for the reasons that follow.

### *Procedural Background and Claims*

Petitioner was convicted of capital murder and sentenced to life imprisonment without parole. The conviction was affirmed on direct appeal. *Davis v. State*, 276 S.W.3d 491 (Tex. App. – Waco 2008, pet. ref'd). The Texas Court of Criminal Appeals refused discretionary review and denied petitioner's application for state habeas relief. *Ex parte Davis*, WR- 66,646-02.

Petitioner raises the following claims for federal habeas relief:

      1.      He was denied his constitutional right to testify.

      2.      Trial counsel was ineffective in

      (a)     failing to object to the State's calling him a "big time drug dealer";

      (b)     not allowing petitioner to testify in his own behalf;

      (c)     failing to object to extraneous offense evidence;

      (d)     failing to object to irrelevant evidence;

      (e)     introducing irrelevant evidence;

      (f)     failing to request a limiting instruction;

      (g)     failing to object to hearsay testimony;

      (h)     failing to impeach the State's witness with inconsistent testimony;

      (I)     failing to ask the State's witnesses about their non-prosecution agreements with the State;

      (j)     failing to object to the State's improper jury argument that asked the jury to convict him based on his lifestyle; and

      (k)     having a conflict of interest in representing him.

    3.     Appellate counsel was ineffective in failing to adequately brief the points of error he raised on direct appeal.

### *The Applicable Legal Standards*

*Habeas Review*

    This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U .S.C. § 2254.  Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, ___U.S. ___, 131 S. Ct. 770, 785 (2011); *Williams v. Taylor*, 529 U.S. 362,

404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31.

*Summary Judgment*

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary

3

judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

### Denial of the Right to Testify

Petitioner asserts that he wanted to testify in his defense at trial, but his trial counsel would not let him. Petitioner states that he would have testified to exculpatory facts known only to him, and that the jury would have believed him and found him not guilty.

In *United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999), the Fifth Circuit Court of Appeals noted that a criminal defendant has a well established constitutional right to testify in his own behalf, and that the right is granted to the defendant personally and not to his counsel. While a defendant may waive his right to testify, such a waiver must be made voluntarily and intelligently; that is, a defense attorney cannot make the decision on behalf of his client, and cannot compel a criminal defendant to remain silent. *Id*. The constitutional right to testify is violated if the final

4

decision that a defendant will not testify is made against his will.  *Jordan v. Hargett*, 34 F.3d 310,

312 (5th Cir. 1994).

In responding to petitioner's assertions on collateral review, trial counsel testified in his

affidavit filed with the trial court as follows:

> The writ also falsely claims that I refused to allow Davis to testify although he
> 'repeatedly expressed the desire to do so.'  In reality, Davis never expressed any
> desire to testify.  To the contrary, he was extremely (and rightly) timid about taking
> the stand in his own defense.  Though I believed that Davis would have significantly
> harmed his case by testifying (as I explain below), I certainly never threatened to
> 'walk' as his attorney if he insisted on testifying. Davis and I spent an extended
> amount of time discussing whether or not he should testify and Judge Langley –
> either on or off the record, I do not recall  – admonished Davis of his right to testify
> and saw to it that Davis had plenty of time to discuss that decision with me.  In my
> professional opinion, putting Davis on the stand would have been a grave mistake
> and I *did* advise him not to testify[.]

*Ex parte Davis*, pp. 170–71 (original emphasis).

Petitioner's co-counsel at trial also submitted an affidavit to the trial court on collateral

review, in which he testified as follows:

> Chad Davis's writ alleges that he was denied a right to testify although he repeatedly
> expressed the desire to do so.  In no way shape or form was Davis  refused his right
> to testify.  If he had demanded to testify, he would have been allowed to do so; albeit
> against the advice of counsel.  Davis, however, did not express the desire to testify
> and [lead counsel] never threatened to quit as his attorney if Davis insisted on
> testifying.  Davis's decision whether or not to testify was discussed extensively
> between Davis, [lead counsel], and myself.  After much discussion, a consensus was
> reached that Davis's best interests would not be served by testifying.  We believed
> that Davis would present poorly to the jury and we further believed that the danger
> presented by his testimony would far outweigh any potential benefit. . . . The decision
> for Davis not to testify was agreed to by all parties, including Davis, after much
> discussion of the issue.

*Ex parte Davis*, pp. 193–94.

In denying petitioner's claim on collateral review, the state trial court made the following

relevant findings:

> 24.    This Court finds that Applicant did not raise the instant claim – that his [trial
> attorney] prevented him from testifying at his trial – in his motion for new trial nor
> present any evidence on this claim during the hearing on said motion.

> 25.    The Court finds that Applicant's assertion – that his [trial attorney] prevented
> him from testifying at his trial – is not credible due to the fact that it is made for the
> first time almost three years after the September 13, 2007 hearing on the motion for
> new trial, is not corroborated and is self-serving.

> 26.    The Court finds that Applicant voluntarily and intelligently waived his right
> to testify, after having been informed by counsel of his right to testify and that the
> right was his alone.

> 27.    The Court finds that Applicant's proposed testimony at trial (that he did not
> intend to kill [complainant], but merely wanted to recover money) would not have
> been significantly different from evidence presented by [his accomplice].

> *    *    *    *

> 157.    Again, the Court finds that Applicant voluntarily and intelligently waived his
> right to testify, after having been informed by counsel of his right to testify and that
> the right was his alone.

*Ex parte Davis*, pp. 470–71, 507 (parenthetical citations omitted).  The Texas Court of Criminal

Appeals expressly relied on these findings in denying habeas relief.  *Id.*, at cover.

The trial court expressly found that the affidavits filed by trial counsel and co-counsel were

credible.  *Ex parte Davis*, pp. 468, 470.  The state trial court further expressly found as not credible

petitioner's allegations that trial counsel refused to let him testify.  *Id.*, p. 470. It is not the role of this

Court on federal habeas review to re-evaluate the credibility of witnesses or testimony, and it must

abide by the state trial court's credibility determinations.  *See Morales v. Thaler*, 714 F.3d 295, 303

(5th Cir. 2013) ("AEDPA does not allow federal habeas courts to gainsay state courts' assessments

of credibility on a cold paper record.").[1]   Consequently, petitioner's disagreement with his trial counsels' factual statements affords him no benefit before this Court.

Petitioner does not meet his burden of proof regarding these findings under the AEDPA standard of review.   His conclusory allegations and arguments constitute nothing more than disagreements with the trial court's findings and conclusions, and are insufficient to preclude summary judgment dismissal of his claims.

The state court denied relief on this claim.   Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

### Ineffective Assistance of Trial Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.   U.S. CONST. amend. VI.   A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984).   To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance.   *Id*. at 687.   The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim.   *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

---

[1]Although the denial of the right to testify is a structural error requiring no proof of specific harm, petitioner's claim that he nonetheless was harmed is unsupported.   The state trial court found that petitioner's proposed testimony would not have been significantly different from testimony presented at trial by his accomplice.   *Ex parte Davis*, p. 471.

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688.  In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy.  *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).  However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled.  *Id.*

Petitioner contends that trial counsel provided ineffective assistance of counsel in the following particulars.

<u>Failing to object to the State's calling him a "big time drug dealer"</u>

Petitioner complains that trial counsel should have objected during trial when the prosecution referred to petitioner as a "big time drug dealer."  In his affidavit submitted to the trial court on collateral review, trial counsel testified that the decision not to object was trial strategy:

Davis's writ alleges that I should have objected to the prosecutor's 'improper' opening and closing statements pertaining to Davis being a drug dealer. The fact that Davis was a drug dealer was, and is, admitted by everyone, including Davis himself in his own affidavit to this writ. The fact that Davis 'was a drug dealer' was consistent with our defensive theory, which acknowledged that Davis was robbed while attempting to purchase cocaine but that Davis never ordered anyone to kill [complainant], and could not have foreseen [his] murder. This was a trial about a shooting death that was alleged to have arisen out of a drug-related robbery of Davis. Accordingly, the fact that Davis was a drug dealer was a point that I believed to be admissible intrinsic or contextual evidence, and therefore unobjectionable. To this point, the [state appellate court] recently held in the appeal of Davis's father, Willie Davis, that evidence of drug use and dealing activity of Chad Davis – including transactions that occurred several years prior to the offense – were  admissible contextual and intrinsic evidence to that prosecution.  If Chad's drug dealing activities were admissible as intrinsic and contextual evidence in his father's trial, then they were certainly admissible against Chad.  Therefore, as evidence of Chad's drug dealings was admissible, I elected not to object so as not to draw more attention to the fact that Davis was a drug dealer than the State had already done.

*Ex parte Davis*, pp. 174–75 (record citations omitted).

Trial counsel reiterated this strategy while testifying at the motion for new trial hearing:

It wasn't inconsistent with the defensive theory.  We conceded that Mr. Davis was a drug dealer.  In fact, we told them that in our opening statement.  It was consistent with the defensive theory.  The word – and I don't mean to ramble.  The words 'big time' were arguably objectionable, but at the same time, no double entendre intended, we conceded that he had a hundred thousand dollars stolen from him.  So maybe big time was – could be perceived as accurate, frankly.

Simply put: It was consistent with the defensive theory that Mr. Davis was a drug dealer.  We didn't run from that.  We really couldn't.

R.R., Motion for New Trial, pp. 48–49.

In rejecting this claim on collateral review, the state trial court found that petitioner "admit[ted] to being a drug dealer and that he would have testified as such.  Consequently, the Court finds that Applicant supported [trial counsel's] defensive theory." *Ex parte Davis*, p. 476.  The Court further concluded that

>A review of the Applicant's claim of ineffective assistance of counsel establishes that he fails to show deficient performance of counsel, much less harm, for the following allegation: that his attorneys failed to object to an improper opening statement labeling Applicant as a big time drug dealer. [Trial counsel's] performance cannot be held deficient, as it is based in sound trial strategy.

*Id*., p. 517.  The Texas Court of Criminal Appeals expressly relied on the trial court's findings and conclusions in denying habeas relief.  *Id*., at cover.

Petitioner fails to establish that trial counsel was deficient in failing to raise the objection, and he fails to show that, had counsel objected, the objection would have been granted.  Further, petitioner fails to show that, but for trial counsel's failure to object, there is a reasonable probability that the result of the trial would have been different.  His conclusory allegation – "It is common knowledge that 'big time' drug dealers sit atop conspiratorial organizations" – is unsupported in the record and affords him no relief.  (Docket Entry No. 2, p.18.)

The state court denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of this claim.

Not allowing petitioner to testify

Petitioner next claims that trial counsel refused to allow him to testify at trial.  Claims of attorney interference with the federal right to testify are governed by the standard announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  *See United States v. Mullins*, 315 F.3d 449, 452–53 (5th Cir. 2002).  Claims involving attorney interference with that right are subject to harmless error review.  *Id*.  To prevail under *Strickland*, a petitioner must establish that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  *Id*. at 453.

It is deficient performance as a matter of law for defense counsel "to override the ultimate decision of a defendant to testify contrary to his advice." *Id*. Conversely, "when the record is simply that the defendant knew of his right to testify and wanted to do so but counsel was opposed, [and the] defendant acquiesced in his lawyer's advice, . . . the only inquiry is whether that advice was sound trial strategy." *Id*. at 453–54.

In responding to petitioner's assertions on collateral review, trial counsel testified in his affidavit filed with the trial court as follows:

> The writ also falsely claims that I refused to allow Davis to testify although he 'repeatedly expressed the desire to do so.' In reality, Davis never expressed any desire to testify. To the contrary, he was extremely (and rightly) timid about taking the stand in his own defense. Though I believed that Davis would have significantly harmed his case by testifying (as I explain below), I certainly never threatened to 'walk' as his attorney if he insisted on testifying. Davis and I spent an extended amount of time discussing whether or not he should testify and Judge Langley – either on or off the record, I do not recall – admonished Davis of his right to testify and saw to it that Davis had plenty of time to discuss that decision with me. In my professional opinion, putting Davis on the stand would have been a grave mistake and I *did* advise him not to testify for the following reasons:
>
> a.    I knew – based on what Davis told me – that Davis had personally provided firearms to the individuals who shot and killed [complainant] and instructed those individuals to retrieve his money and, if not, to 'get something' from [complainant]. The possibility that this information would've been revealed under cross examination was a grave risk.
>
> b.    Davis had prior convictions that were not otherwise admissible that potentially could have been used to impeach Davis.
>
> c.    Davis and his father, Willie Davis, had written several letters to one another while incarcerated awaiting trial in which they discussed their massive scale drug dealing. Such letters would have likely been authenticated and admitted by the State through Davis. The letters also contained inflammatory statements by Willie Davis stating that he would 'kill for Chad' and alluded to several acts of violence on the part of Chad Davis. Without Davis testifying, the possibility of the letters being admitted was slim. His

11

testifying would have likely opened the door to the letters coming into evidence.

d.      And finally, in my professional opinion, Davis would not have been well received as a witness by the jury.  Simply put, he would not have presented well to a Brazos County jury.  He was arrogant, defiant, and angry.  I did not feel that he would have made a favorable witness.

*Ex parte Davis*, pp. 170–71 (original emphasis, record citations omitted).

Co-counsel also submitted an affidavit to the trial court on collateral review, in which he

testified as follows:

Chad Davis's writ alleges that he was denied a right to testify although he repeatedly expressed the desire to do so.  In no way shape or form was Davis  refused his right to testify.  If he had demanded to testify, he would have been allowed to do so; albeit against the advice of counsel.  Davis, however, did not express the desire to testify and [lead counsel] never threatened to quit as his attorney if Davis insisted on testifying.  Davis's decision whether or not to testify was discussed extensively between Davis, [lead counsel], and myself.  After much discussion, a consensus was reached that Davis's best interests would not be served by testifying.  We believed that Davis would present poorly to the jury and we further believed that the danger presented by his testimony would far outweigh any potential benefit. . . . The decision for Davis not to testify was agreed to by all parties, including Davis, after much discussion of the issue.

*Ex parte Davis*, pp. 193–94.  The trial court expressly found that the affidavits filed by trial counsel

and co-counsel were credible.  *Ex parte Davis*, pp. 468, 470.  The trial court further found that, as

to certain underlying factual statements made by petitioner, the statements were false.  *Id*., pp.

470–71, 474.

The state trial court made the following relevant findings in denying petitioner's claim on

collateral review:

24.     This Court finds that Applicant did not raise the instant claim – that his [trial attorney] prevented him from testifying at his trial – in his motion for new trial nor present any evidence on this claim during the hearing on said motion.

25.     The Court finds that Applicant's assertion – that his [trial attorney] prevented him from testifying at his trial – is not credible due to the fact that it is made for the first time almost three years after the September 13, 2007 hearing on the motion for new trial, is not corroborated and is self-serving.

26.     The Court finds that Applicant voluntarily and intelligently waived his right to testify, after having been informed by counsel of his right to testify and that the right was his alone.

27.     The Court finds that Applicant's proposed testimony at trial (that he did not intend to kill [complainant], but merely wanted to recover money) would not have been significantly different from evidence presented by [his accomplice].

*   *   *   *

157.     Again, the Court finds that Applicant voluntarily and intelligently waived his right to testify, after having been informed by counsel of his right to testify and that the right was his alone.

*Ex parte Davis*, pp. 470–71, 507 (parenthetical citations omitted).  The Texas Court of Criminal Appeals expressly relied on these findings in denying habeas relief.  *Id*., at cover.

The trial court expressly found that trial counsel's affidavit was credible, a finding that this Court may not revisit under AEDPA.  Even assuming that counsel were somehow deficient for interfering with petitioner's right to testify, petitioner fails to demonstrate actual prejudice.  The state trial court on habeas review found that petitioner's proposed testimony was substantially the same as that presented by his accomplice, such that petitioner's potential testimony was already before the jury.  The trial court's findings are supported by the record and petitioner fails to meet his burden of proof under AEPDA.

The state court denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an

13

unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

>   Failing to object to extraneous offense evidence

Petitioner contends that trial counsel was ineffective in failing to object throughout the trial to evidence of numerous alleged extraneous offenses.  In response, and as found by the trial court on collateral review, trial counsel testified at the motion for new trial hearing that he did not object to these items as they were consistent, or were not inconsistent, with the defensive theory.  Trial counsel further explained that, as to some of the items, he believed they were not objectionable under state law.  *Ex parte Davis*, pp. 474–82.  Trial counsel did admit that he probably should have objected to evidence of petitioner's expansive home, boats and collections of vehicles, but he did not "think it was reversible" or that he "was going to get any relief."  *Id*., p. 482.

In his affidavit submitted to the trial court on collateral review, trial counsel testified as follows:

> The writ further claims that I should have objected to various pieces of evidence related to the guns and cash that Davis possessed at the time of the killing.  I did not object to this evidence for the same reasons I did not object to the evidence of drug activities:  It was admissible contextual and intrinsic  evidence and I did not want to emphasize Davis's possession of guns and a large amount of cash by objecting to its introduction.

*Ex parte Davis*, p. 176.

As noted by the trial court on collateral review, this exact same evidence was introduced during the trial of petitioner's co-defendant, Willie Davis.  *Id*., pp. 482–83.  Objections were raised, and overruled, as to the purported extraneous offense evidence during co-defendant's trial, and the rulings were upheld on direct appeal.  The trial court in petitioner's case referred to the rulings in

Willie Davis's case, and concluded that trial counsel was not ineffective in raising these same

groundless arguments in petitioner's case:

> 28.     In co-defendant Willie Davis'[s] case, the court of appeals held that the items of extraneous-offense evidence were properly admitted as same transaction contextual evidence.  Again, the court of appeals held:

>> The evidence that Davis complains about can be divided into two categories: guns and cash, and drug transactions and drug use.

>> *Guns and Cash*

>> The evidence and issues are:

>> Chad's semi-automatic rifle and a magazine loaded with five rounds, seized at Chad's home when he was arrested.

>> Numerous photographs of money and guns seized at Chad's home.

>> Trey's assault rifle, found in his bedroom in Davis's home, and an invoice and receipt for that rifle, showing that it was purchased the day before the offense.

>> Travis Crockett's testimony about Trey's lifestyle with multiple vehicles.

>> Cash and ammunition found on the tour bus.

>> Much evidence was presented that drug dealers are concerned about being robbed of their drugs and money, and they thus possess and carry weapons.  The State asserts that the motive for the conspiracy was to retrieve money from [the complainant] and to retaliate for [his] $100,000 robbery of Chad.  We agree that, to put the conspiracy offense in context, evidence that the Davises were drug dealers who dealt in large amounts of cash and with guns to protect their drugs and cash was necessary. Because this category of evidence was same-transaction contextual evidence and background contextual evidence, the trial court did not abuse its discretion in admitting this evidence.

>> *Drug Transactions and Drug Use*

>> The evidence and issues are:

Jason Bishop's testimony about two prior drug transactions in Georgia in which [Willie] Davis, Chad, and Trey were selling drugs to Bishop and then to Bishop's friend Mike, and the drugs had been transported to Georgia hidden in the boat that was pulled by a vehicle driven by [Willie] Davis, who helped take the drugs out of the boat and give them to Bishop.

[A witness's] testimony about his large-volume drug business with Chad several years before the offense.

Chad's calendar showing drug transactions, including transactions with Davis.

Marte Fox's testimony about the Houston drug deal where [the complainant] robbed Chad and [Willie] Davis showed up soon thereafter.

Leslie Leshe's testimony about smoking marijuana with Trey at Davis's home and about marijuana kept in the freezer there, along with Davis's cigarettes.

The State sought to show that Davis was an active participant with Chad and Trey in a large-volume and dangerous drug business – and not just an after-the-fact bus driver – to explain why Davis would have entered into the conspiracy with his sons to rob [the complainant]. The trial court did not abuse its discretion in admitting this evidence; it too was same-transaction contextual evidence and background contextual evidence that put in context the conspiracy offense that Davis was charged with.

29.     In co-defendant Willie Davis'[s] case, the court of appeals held that admission of the items of extraneous-offense evidence did not violate TEX. R. EVID. 403.

                              *    *    *    *

36.     A review of the Applicant's claims of ineffective assistance of counsel establishes that he fails to show deficient performance of counsel, much less harm, in the following areas:

allegation of a failure to object to evidence of an extraneous offense concerning marijuana recovered during a search of Applicant's home.

> allegation of a failure to object to evidence of Applicant's drug
> selling activities as reflected in a personal organizer recovered during
> search of his home.
>
> allegation of a failure to object to evidence wherein Travis Crockett
> asserted Applicant earned a living from dealing drugs.
>
> allegations of a failure to object to evidence wherein Marte Fox
> recounted Applicant's drug dealing activities.
>
> 37.     The extraneous offenses complained of [by Applicant] were properly
> admitted. [Trial counsel's] performance cannot be held deficient for failing to object
> to otherwise admissible evidence. [Trial counsel's] performance cannot be held
> deficient as it is based in sound trial strategy.

*Ex parte Davis*, pp. 518–19, 521–22 (citations and record citations omitted).  The Texas Court of

Criminal Appeals expressly relied on the trial court's findings and conclusions in denying habeas

relief.  *Id*., at cover.

The state court found that the purported extraneous evidence was not improperly admitted

under state law.  Because these determinations involved application and interpretation of state law,

this Court is bound by those findings for purposes of petitioner's ineffective assistance claims.  *See*

*Robison v. Johnson*, 151 F.3d 256, 260–61 (5th Cir. 1998).  Given these state law determinations,

trial counsel was not deficient in failing to object.  *See Turner v. Quarterman*, 481 F.3d 292, 298

(5th Cir. 2007) (holding that "counsel cannot have rendered ineffective assistance of counsel by

failing to make an objection that would have been meritless").  Regardless, petitioner fails to show

that, had counsel objected, the objections would have been sustained and the evidence excluded.

Moreover, petitioner fails to show that, but for counsel's failures to object, there is a reasonable

probability that the results of his trial would have been different.  In short, petitioner establishes

neither deficient performance nor harm under *Strickland*.

The state court denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

<u>Failing to object to irrelevant offenses</u>

Petitioner complains that trial counsel failed to object to the State's introduction of irrelevant offenses regarding petitioner and other participants in the offense.  Petitioner claims that, but for counsel's failure to object to this irrelevant evidence, there is a reasonable probability that the results of the trial would have been different.

In denying petitioner relief on this claim, the trial court on collateral review made the following relevant conclusions of law:

38.   The Court adopts its recitation of law found under Conclusions of Law 25–26; 28–35.

39.   A review of the Applicant's claims of ineffective assistance of counsel establishes that he fails to show deficient performance of counsel, much less harm, in the following areas:

allegation of a failure to object to evidence concerning a handgun and rifle seized from Applicant's home.

alleged a failure to object to evidence concerning Applicant carrying a handgun on his person and in his car.

alleged a failure to object to evidence concerning handgun seized from Applicant's home.

allegation of a failure to object to evidence concerning eight cell phones and four pagers seized from Applicant's home after execution of a search warrant.

allegation of a failure to object to evidence concerning cash and weapons seized from Willie and Trey Davis'[s] home after execution of a search warrant.

allegation of a failure to object to evidence concerning photographs taken of guns recovered from the home of Willie and Trey Davis.

allegation of a failure to object to evidence concerning Thomas Parent being a drug dealer in Georgia.

allegation of a failure to object to evidence concerning Applicant's expansive home, boats and collection of vehicles.

allegations of a failure to object to evidence concerning Trey Davis'[s] possession of a shotgun.

alleged a failure to object to evidence concerning Applicant's ownership of various firearms.

allegation of a failure to object to evidence concerning Trey Davis'[s] possession of a pistol and shotgun he kept in his car.

allegation of a failure to object to evidence concerning Trey Davis being a drug dealer.

40.    Again, [these] extraneous offenses . . . were properly admitted. [Trial counsel] cannot be held deficient for failing to object to otherwise admissible evidence. [Trial counsel's] performance cannot be held deficient, as it is based in sound trial strategy.

*Ex parte Davis*, pp. 522–24 (citations and record citations omitted).  The Texas Court of Criminal Appeals expressly relied on the trial court's findings and conclusions in denying habeas relief.  *Id.*, at cover.

The state court found that the purported evidence was not improperly admitted under state law.  Because these determinations involved application and interpretation of state law, this Court is bound by those findings for purposes of petitioner's ineffective assistance claims.  *See Robison*, 151 F.3d at 260–61.  Given these state law determinations, trial counsel was not deficient in failing

19

to object.  *See Turner*, 481 F.3d at 298 (holding that "counsel cannot have rendered ineffective assistance of counsel by failing to make an objection that would have been meritless").  Regardless, petitioner fails to show that, had counsel objected, the objections would have been sustained and the evidence excluded on grounds of irrelevancy.  Moreover, petitioner fails to show that, but for counsel's failures to object, there is a reasonable probability that the results of his trial would have been different.  In short, petitioner fails to establish both deficient performance and harm under *Strickland*.

The state court denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

<u>Introducing irrelevant evidence</u>

Petitioner next asserts that trial counsel was ineffective in introducing irrelevant evidence concerning $11,000.00 found in a safe during a search of his home.  Petitioner complains that this money was portrayed as being drug money.

The trial court on collateral review made the following relevant findings concerning this issue:

> 103.    During trial, [trial counsel] cross-examined Investigator John Pollock, who was present at Applicant's home when it was searched during the early morning hours of January 23, 2004.  Pollock agreed that Applicant was aware he was being investigated for about five months before the search of his house was conducted.  Pollock noted that Applicant did not know his agency was coming to execute the warrant.  Pollock also agreed that they located a planning calendar that did not have any white outs.  Pollock also stated that they only located only an ounce or two of marijuana in the house.  During the line of questioning, [trial counsel] asked the following:

20

Q.    How much cash did you find at the home?

A.    I know Investigator Kindell opened the safe with approximately $11,000 in cash.

104.    During the hearing on the motion for new trial, [trial counsel] stated that he did not recall asking Pollock that question and could not provide a reason for having introduced said testimony.   However, [trial counsel] has previously noted the following:

> [T]he Davises had been aware of this investigation for some time – for months before they were actually charged, and I felt like the presence of weapons still at their house was consistent with a belief on their part that they didn't have anything to hide or run from law enforcement[.]

*Ex parte Davis*, pp. 489–90 (record citations, emphasis omitted).  The Texas Court of Criminal Appeals expressly relied on the trial court's findings and conclusions in denying habeas relief.  *Id.*, at cover.

A review of the record shows that petitioner's over-arching defense theory was that he may have been a drug dealer, but he was not a murderer.  The defense did not attempt to hide the fact that the complainant had stolen $100,000.00 from petitioner, and that petitioner had wanted the money returned.  In this light, petitioner cannot persuasively argue that he was harmed by evidence that, in addition to having $100,000.00, he was in possession of $11,000.00.  Consequently, even assuming counsel was deficient in eliciting testimony regarding the $11,000.00, petitioner fails to establish that he was prejudiced by the testimony, and the *Strickland* requirements are not met.

The state court denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

<u>Failing to request a limiting instruction</u>

Petitioner claims that trial counsel failed to request a limiting instruction regarding "extraneous offense evidence" of petitioner's drug dealings and his possession of cash and guns. In response, trial counsel testified in his affidavit submitted to the trial court that he believed the evidence was intrinsic and contextual, and that a limiting instruction would have been unwarranted and inappropriate. *Ex parte Davis*, p. 178.

> In rejecting petitioner's claim on collateral review, the state trial court concluded that:

> In co-defendant Willie Davis's case, the court of appeals held that a limiting instruction was not needed when the items of extraneous-offense evidence were admitted; a trial court is not required to give a limiting instruction for same transaction contextual evidence. *Davis v. State*, 2011 WL 322877, *11.

*Ex parte Davis*, p. 519.  The Texas Court of Criminal Appeals expressly relied on the state court's findings and conclusions in denying habeas relief. *Id*., at cover.

The state court found that the purported extraneous evidence was not improperly admitted under state law, and that a limiting instruction was unnecessary.  Because these determinations involved application and interpretation of state law, this Court is bound by those findings for purposes of petitioner's ineffective assistance claims. *See Robison*, 151 F.3d at 260–61.  Given these state law determinations, trial counsel was not deficient in failing to request a limiting instruction. *See Turner*, 481 F.3d at 298 (holding that "counsel cannot have rendered ineffective assistance of counsel by failing to make an objection that would have been meritless").

The state court denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an

unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

<u>Failing to object to hearsay testimony</u>

Petitioner argues that trial counsel was ineffective in failing to object to hearsay statements made by various trial witnesses.  According to petitioner, there is a reasonable probability that the results of his trial would have been different had trial counsel objected to the hearsay statements.

In rejecting petitioner's hearsay claims, the intermediate state appellate court held as follows:

> Davis contends in his final issue that he received ineffective assistance of counsel. He asserts that [trial counsel] was ineffective in at least 35 different respects, including areas such as failing to object to improper opening and closing statements, extraneous offenses, and irrelevant and hearsay evidence, and in failing to impeach witnesses on perjured statements and plea deals.
>
> *   *   *   *
>
> Here, Davis does not argue or supply authority as to why each item of evidence was inadmissible.  Davis merely concludes that the opening and closing arguments were improper, the extraneous offense testimony was inadmissible and that some testimony was irrelevant or hearsay evidence by simply listing the items.  'When an ineffective assistance claim alleges that counsel was deficient in failing to object to the admission of evidence, the defendant must show, as part of his claim, that the evidence was inadmissible.'  Davis does not demonstrate the evidence was inadmissible.  Therefore, we cannot say counsel's failure to object constituted ineffective assistance.

*Davis*, 276 S.W.3d at 501–02 (citations omitted).

Petitioner re-asserted his hearsay claims on collateral review.  In response, trial counsel submitted an affidavit to the trial court, testifying as follows:

> The writ claims that I was ineffective because I did not object to hearsay statements of various co-conspirators of Davis's;  namely, Thomas Parent, Brad Padrick, Trey Davis, and Leslie Leshe.  These statements were made by Davis's co-conspirators and, as the writ recognizes, were made in furtherance of the  conspiracy for murder

to get Davis's money back.  Accordingly, the statements were admissible under Rule 801(e)(2)(E).

*Ex parte Davis*, p. 176.

In denying habeas relief, the trial court on collateral review found that trial counsel testified during the motion for new trial hearing that he did not object to the purported hearsay statements because they were either admissible under state law, were consistent (or not inconsistent) with the defensive theory and favorable, or were statements that the State would have been able to prove up through non-hearsay sources.  *Ex parte Davis*, pp. 483–89.  The trial court also made the following relevant conclusions of law:

> 41.    Because [petitioner's] application does not allege any facts in support of his claim that his attorneys failed to object to hearsay statements by Jesse Mancuso, Russell Hughes, Willie Davis, and Kay Hughes, he has failed to preserve this issue for review.

> 42.    Evidence of secreting evidence is evidence of consciousness of guilt.  It also demonstrates that Willie Davis was acting in cooperation with his sons and their part of the conspiracy.

> 43.    Statements of coconspirators are not hearsay and are admissible against another coconspirator if the statement is made during the course of and in furtherance of the conspiracy.

> 44.    In the alternative, a review of the Applicant's claims of ineffective assistance of counsel establishes that he fails to show deficient performance of counsel, much less harm, in the following areas:

>> allegation of a failure to object to hearsay concerning statements made by Jesse Mancuso during a telephone conversation with Emily Green.

>> alleged a failure to object to hearsay concerning a telephone call by Russell Hughes to Jessie Mancuso.

>> alleged a failure to object to hearsay concerning statements made by Willie Davis to Investigator Kenny Elliott.

24

allegation of a failure to object to hearsay from Kay Hughes concerning statements by her son Russell Hughes.

allegation of a failure to object to hearsay by Thomas Parent as recounted by Brad Padrick.

allegation of a failure to object to hearsay by Trey Davis to Leslie Leshe made several months before the offense.

45.    The above evidence was properly admitted. [Trial counsel] cannot be held ineffective where any objection possessed no merit.   Again, [trial counsel's] performance cannot be held deficient, as it is based in sound trial strategy.

*Ex parte Davis*, pp. 524–26 (citations and record citations omitted).  The Texas Court of Criminal Appeals expressly relied on the trial court's findings and conclusions in denying habeas relief.  *Id.*, at cover.

Here, petitioner does little more than disagree with the state court rulings, findings, and conclusions, and set forth arguments already rejected by the state court.  Petitioner fails to show that the purported hearsay statements were inadmissible, or that counsel's trial strategy for not objecting was unreasonable under the circumstances of petitioner's trial.  Moreover, petitioner fails to show that, but for counsel's failures to object to the alleged hearsay statements, there is a reasonable probability that the results of his trial would have been different.  Petitioner again fails to establish deficient performance or harm under *Strickland*, and habeas relief is unwarranted.

The state court denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

<u>Failing to impeach the State's witness with inconsistent testimony</u>

Under this claim, petitioner argues that trial counsel should have impeached a witness's inconsistent testimony regarding the number of times he watched a videotape of his out-of-state interrogation.  Petitioner contends that, but for counsel's failure to elicit this inconsistency in the witness's testimony, there is a reasonable probability that the result of the trial would have been different.

This issue was addressed by the parties at the motion for new trial hearing and raised on direct appeal.  The intermediate state appellate court set forth the relevant facts as follows:

> At trial, Padrick testified on direct and cross-examination that he did not watch the videotape of his statement before he testified.  After both sides had finished questioning Padrick and the jury had been excused for lunch, the State told Davis's counsel that Padrick had seen the videotape.  He told the defense that, although Padrick testified he did not see the tape, he was aware that Padrick had indeed reviewed the tape with his lawyer.  The State then said that it would stipulate that Padrick had seen the tape or bring Padrick back on the stand.  Davis's counsel thanked the State for the information but stated that neither action was necessary.

*Davis*, 276 S.W.3d at 499.  In rejecting petitioner's claim of ineffective assistance of counsel on this issue, the appellate court held as follows:

> Lastly, Davis argues that trial counsel was ineffective for failing to correct Padrick's perjured statements regarding reviewing his videotaped statement[.] At the hearing, [trial counsel] stated that he found the testimony by Padrick to be far more favorable to Davis than he originally expected.  He stated that he did not want to risk recalling Padrick and attacking his credibility because it would cause the jury to disbelieve the favorable statements Padrick made toward Davis's defensive theory of the case. [Counsel's] performance here cannot be held to be deficient because it was based on a sound trial strategy.

*Id.*, at 502.

In rejecting petitioner's claim of ineffective assistance of counsel, the state trial court on collateral review made the following relevant findings:

26

106.    [A]pplicant alleges that his attorneys failed to impeach state's witness Brad Padrick concerning how many times he viewed a videotape of his Georgia interrogation.

\*    \*    \*    \*

108.    During the hearing on the motion for new trial, [trial counsel] gave the following explanation for not recalling Padrick:

> The reason I didn't develop that further or call him back was – I think I had Mr. Padrick in as good of a position as I could have him in.  I think he fairly summarized – his testimony was actually far more favorable to the defensive theory than unfavorable to the defensive theory on the large and important issue of intent to kill, and I didn't want to impeach him at that point because I felt like I was – I would be doing my client more disservice than good because I kind of liked where we had him and why I didn't want to show that he was a liar, he couldn't be trusted.  I believe that was my thought process at the time.

109.    The record confirms that Padrick's testimony . . . was favorable to the defensive theory[.]

*Ex parte Davis*, pp. 490–92 (record citations omitted).

The trial court also made the following relevant conclusions of law:

48.    Because [this] issue was litigated and overruled on direct appeal, [the] issue is not cognizable in a habeas corpus proceeding.

49.    A review of Applicant's claim of ineffective assistance of counsel establishes that he fails to show deficient performance of counsel, much less harm, for the following allegation:  that his attorneys failed to impeach state's witness Brad Padrick concerning how many times he viewed a videotape of his Georgia interrogation.  '[Trial counsel's] performance cannot be held to be deficient because it was based on sound trial strategy.'

*Id*., p. 527 (citations and record citations omitted).  The Texas Court of Criminal Appeals relied on

the state trial court's findings and conclusions in denying habeas relief.  *Id*., at cover.

27

In light of counsel's exercise of sound trial strategy, counsel was not ineffective. Petitioner's disagreements with the trial court's findings and decisions are insufficient to meet his burden of proof under the AEDPA. Regardless, petitioner fails to establish that, but for counsel's failure to impeach Padrick with this evidence, there is a reasonable probability that the results of the trial would have been different.

The state court denied relief on this claim. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

<u>Failing to ask witnesses about their agreements with the State</u>

In this ground, petitioner claims that trial counsel should have elicited evidence from certain witnesses showing that they had agreements with the State regarding their testimony. Specifically, petitioner contends that counsel should have inquired into the State's non-prosecution agreements with witnesses Tara Diamond, Angela Johnson, Kay Hughes, Adam Goodman, Travis Crockett, Marte Fox, and Leslie Leshe.

Petitioner raised this claim of ineffective assistance of counsel on direct appeal, and the intermediate state court of appeals rejected the argument, as follows:

> Lastly, Davis argues that trial counsel was ineffective for . . . not impeaching several witnesses on plea deals made with the State. At the hearing [on the petitioner's motion for new trial], [trial counsel] also testified as to why he did not impeach witnesses on deals made with the State. He stated that several witnesses gave favorable testimony and therefore he did not want to attack their credibility and that the other witnesses were immaterial and did not implicate Davis in this case. We agree. Once again, [counsel's] performance cannot be held to be deficient because it was based on a sound trial strategy. We cannot say that the evidence set out by Davis establishes that counsel rendered ineffective assistance.

28

*Davis*, 276 S.W.3d at 502 (citations omitted).

In responding to petitioner's claim on collateral review, trial counsel submitted an affidavit

to the trial court, testifying as follows:

> The writ claims that I failed to cross examine numerous witnesses concerning alleged non-prosecution agreements with the State. With regard to many of these witnesses, there was no indication that they had engaged in any criminal conduct and no indication that they had such agreements with the State. Specifically, Tara Diamond was [complainant's] girlfriend, had arrived in Texas on the same day of the shooting, and there was no suggestion that she had committed any crime. Angela Johnson was [another witness's] girlfriend and there was no indication that she had engaged in any criminal conduct, other than perhaps using drugs. Kay Hughes, from my recollection, was a nurse in Georgia who treated two of the individuals who were shot. There was no indication that she participated in an criminal activity, and certainly none in Texas. With respect to Adam Goodman, there was no indication that he participated in any crime and I recall that his testimony was, for the most part, helpful to Davis. I do, however, recall crossing Goodman on whether he was 'intimidated or frightened' by law enforcement into testifying. Goodman stated that he came to Texas 'looking for a good time' and not to participate in criminal activity. There was no indication that Travis Crockett participated in any criminal activity. I did, however, fully cross examine him regarding being threatened by law enforcement. Marte Fox was Davis's girlfriend and was unpredictable and impossible to control as a witness. Leading up to trial, Fox was extremely inconsistent with her willingness to assist in Davis's defense. She had intimate knowledge of Davis's violent acts and tendencies and I felt she was a risk of testifying to those acts at any point – whether under direct or cross examination – regardless of the call of the question. Therefore, when the prosecution did not develop the existence of numerous such threats through Fox's direct testimony, and her testimony was not otherwise very harmful to Davis, I elected not to cross her in a confrontational manner. Finally, there was never an indication that [Leslie Leshe] ever committed a crime or had a non-prosecution agreement with the State.

*Ex parte Davis*, pp. 177–78.

In rejecting petitioner's claim on collateral review, the state trial court made the following

conclusions of law:

> Because this issue [regarding counsel's deficiency as to witnesses Tara Diamond, Angela Johnson, Kay Hughes, Adam Goodman, Travis Crockett, Marte Fox, and Leslie Leshe] was litigated and overruled on direct appeal, that issue is not cognizable in a habeas corpus proceeding.
>
> A review of Applicant's claim of ineffective assistance of counsel establishes that he fails to show deficient performance of counsel, much less harm, for the following allegation: that his attorneys failed to cross examine [Tara Diamond, Angela Johnson, Kay Hughes, Adam Goodman, Travis Crockett, Marte Fox, and Leslie Leshe] concerning [each witness's] non-prosecution agreement with the State. '[Counsel's] performance cannot be held to be deficient because it was based on a sound trial strategy.'

*Ex parte Davis*, pp. 527–31 (citations omitted).  The Texas Court of Criminal Appeals relied on the state trial court's findings and conclusions in denying habeas relief.  *Id*., at cover.

In rejecting petitioner's claims of ineffective assistance, the intermediate state appellate court found that trial counsel's decision not to cross examine the witnesses regarding their (alleged) non-prosecution agreements was grounded in sound trial strategy.  In light of counsel's exercise of sound trial strategy, counsel was not constitutionally ineffective.  Petitioner's disagreements with the trial court's findings and decisions are insufficient to meet his burden of proof under the AEDPA.

The state court denied relief on petitioner's claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

<u>Failing to object to the State's improper closing argument</u>

Petitioner argues that trial counsel failed to object to improper closing argument in which the State urged the jury to convict him on the basis of his "drug dealer lifestyle."

The record shows that, during closing argument, trial counsel argued, in relevant part, as

follows:

> I guess like any young man under those circumstances, maybe wrong as they were, [a witness] was impressed that he was on a half-a-million-dollar bus.  I hope that all this talk about a half-a-million-dollar bus, all this talk about fancy cars and jet skis and fancy homes and lavish lifestyles. [*sic*]

> \*   \*   \*   \*

> I'm working 20-hour days, folks.  That's not your concern, but I'm working as hard as I can work and it's real easy when we work hard to get fed up, to get angry, to get upset, to get jealous of somebody's lifestyle who didn't work as hard as us and for us to say, 'You know what? That person's not worth it.  To hell with them.'

> This trial is not just about [petitioner].  Okay.  This trial is about the integrity of the system and whether or not the evidence proves his guilt beyond a reasonable doubt. Stay away from emotions like jealousy.  Stay away from emotions like anger.  Stay away from emotions like rage.  Analyze this evidence as objectively and as fairly and as long as you want as it will get the right result.

R.R., Vol. 11, pp. 56–57.

The record further shows that the State, during its ensuing closing argument, responded as

follows:

> The lifestyle.  We brought you a lot of information about nice as [*sic*], a lot of cars. Let me tell you, the motive for this crime was $100,000 robbery on Chad Davis.  You had very little testimony of that.  You had Marte Fox get on the stand and say, 'somebody came in and came back out,' and that's all you knew about it other than Chad Davis saying he got ripped off of $100,000.

> Are we going to paint the picture for you that you can see that yes, Chad Davis is a guy that would have $100,000?  Yes, this motive for doing what he did is consistent with who Chad Davis is.  He is big time.  That's why all that money and the houses and the boat and the car, that's why all that's important.  Yes, he is the victim of $100,000 robbery.  Yes, that's the kind of thing where people do pretty major things.

*Id*., p.102.

31

In rejecting petitioner's claim of ineffective assistance of counsel, the trial court on collateral

review found as follows:

> 153.    A review of the State's argument, taken in context, shows that the prosecutor properly responded to [trial counsel's] argument[.]

> 154.    During the motion for new trial hearing, [trial counsel] gave his explanation for not objecting:

>> Q.    Why did you not object to closing argument urging the jury to convict the defendant of capital murder on the basis of his lifestyle as a drug dealer[?]

>> A.    I don't think that was the statement made by the prosecution.

*Ex parte Davis*, p. 506 (record citations omitted).

The trial court also made the following relevant conclusions of law:

> 64.    A review of the Applicant's claim of ineffective assistance of counsel establishes that he fails to show deficient performance of counsel, much less harm, for the following allegation: that his attorneys failed to object to improper closing argument urging the jury to convict Applicant on the basis of his alleged life style [*sic*] as a drug dealer.

> 65.    The State's argument was proper.  It is appropriate for a prosecutor to provide an answer to argument of opposing counsel during closing argument.  Evidence showing a motive is admissible even though it shows the commission of an extraneous offense.   Consequently, the prosecution may always offer evidence to show motive for the commission of the offense.  The State's closing argument properly discussed Applicant's lifestyle as 'the motive for this crime was $100,000 robbery on Chad Davis.'  It is also proper for a prosecutor to offer a summation of the evidence or argue a reasonable deduction from the evidence during closing argument.

*Ex parte Davis*, pp. 531–32 (citations and record citations omitted).  The Texas Court of Criminal

Appeals relied on the state trial court's findings and conclusions in denying habeas relief.  *Id*., at

cover.

In rejecting petitioner's claims of ineffective assistance, the state court held that the complained-of jury argument was proper in context of the case and evidence, and that counsel's objection would have been groundless.   In light of the propriety of the State's arguments, trial counsel was not ineffective in failing to raise an objection.   Moreover, petitioner fails to show that, but for counsel's failure to object, there is a reasonable probability that the result of the trial would have been different.   Petitioner establishes neither deficient performance nor harm, and his disagreements with the trial court's findings and rulings are insufficient to meet his burden of proof under the AEDPA.

The state court denied relief on this claim.   Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

Having a conflict of interest in representing him

In this claim, petitioner argues that trial counsel was ineffective because his attorneys had a conflict of interest.   Specifically, petitioner states that he gave a vehicle to trial counsel in payment for his legal fees.   Trial counsel then sold the vehicle to a third party, but the vehicle was repossessed under a "hidden" lien unknown to petitioner or trial counsel, and the third party sued trial counsel for damages.   According to petitioner, this caused trial counsel to become distracted as well as angry at petitioner, resulting in counsel's making numerous errors at trial.

The issue of conflict-free legal representation is a mixed question of law and fact.   *Cuyler v. Sullivan*, 446 U.S. 335, 342 (1980).   To prevail, a petitioner must establish an actual conflict of interest, and show that his counsel actually acted on behalf of those other interests during the trial.

*Id.* at 349–350.  If a petitioner shows that an actual conflict of interest adversely affected the adequacy of his representation, then prejudice is presumed.  *Id.* at 350.  The mere possibility of a conflict, without more, will not justify a new trial or reversal of a conviction.  *Id*.

In rejecting this claim on collateral review, the state trial court made the following relevant findings:

> 11.    [Trial counsel] denies Applicant's claims that he was distracted by legal and financial interests and malicious feelings arising out of the [vehicle] lawsuit, in his credible affidavit. [Trial counsel] replies that Applicant sold the vehicle to a third party and that [trial counsel] never took ownership of the [vehicle]. [Counsel's] only involvement was to allow the transaction to be closed in his office.  Consequently, the sale of the vehicle was not a transaction between he and Applicant.  Although he was sued by the third party, the case against [trial counsel] was dismissed without any payment of money on [counsel's] part. [Trial counsel] denies that he had malicious feelings arising out of the [vehicle] lawsuit. [Co-counsel] confirms the same in his credible  affidavit.

> 12.    This Court finds that the statements made by [trial counsel and co-counsel] in  their affidavits are credible and reliable.

> 13.    Concerning this issue, the Court finds that the affidavits of Applicant, co-defendant Willie Davis and co-defendant Trey Davis are not credible due to the fact that the allegation of conflict of interest was not made during the September 13, 2007 motion for new trial hearing, is not corroborated by credible evidence and is self serving.

*Ex parte Davis*, pp. 466–67 (record citations omitted).  The trial court also made the following relevant conclusions of law:

> 18.    Where there is no evidence that Applicant objected on the basis of a conflict of interest before trial, during trial or raised the issue during the motion for new trial, this Court assumes that the Applicant knowingly accepted the risk of a conflict, if any.  *See Cuyler v. Sullivan*, 446 U.S. 335, 346–347 (1980).

> 19.    Applicant has not proven the first prong of *Cuyler*, where he failed to demonstrate than an actual conflict of interest adversely affected his counsel's performance.  There is no credible evidence to suggest that Applicant's trial counsel acted adversely to Applicant's interests.

> 20.     Even if there was an actual conflict of interest, Applicant cannot meet the
> second prong of *Cuyler*.  *See Cuyler*, 446 U.S. at 350 ("[U]ntil a defendant shows
> that his counsel actively represented conflicting interests, he has not established the
> constitutional predicate for his claim of ineffective assistance.").  The record does not
> show that [trial counsel] actually advanced his own interest, if any, to Applicant's
> detriment.

*Ex parte Davis*, pp. 514–15.  The Texas Court of Criminal Appeals expressly relied on the trial

court's findings and conclusions in denying habeas relief.  *Id*., at cover.

Petitioner's arguments to this Court constitute little more than the re-urging of the same

arguments he presented to the state courts.  Petitioner's basic premise is conclusory at best:  "If

someone else's actions are the direct cause of you having a lawsuit filed against you, of course you

will have a conflict of interest in fairly representing that person from that point forward." (Docket

Entry No. 9, p. 4.)  His disagreements with the denial of state habeas relief and his presentment of

conclusory allegations of a conflict of interest and harm are insufficient to meet his burden of proof

under the AEDPA standard of review.  This Court has reviewed the state court record and finds no

grounds for setting aside the state court's findings and conclusions or for disagreeing with the denial

of habeas relief.

Petitioner fails to show that the state court's determination was contrary to, or involved an

unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on

the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

### Ineffective Assistance of Appellate Counsel

Persons convicted of a crime are entitled to effective assistance of counsel on direct appeal.

*Evitts v. Lucey*, 469 U.S. 387 (1985).  This Court reviews counsel's appellate performance under the

*Strickland* standards.  *See Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1998).  Petitioner must

allege and present facts showing that his appellate counsel's representation was deficient and that the deficient performance caused him prejudice.  That is, petitioner must show that, but for appellate counsel's deficient performance, the outcome of the appeal would have been different.  *See Strickland*, 466 U.S. at 687–88, 692; *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998).  Effective assistance of appellate counsel does not mean that counsel will raise every available non-frivolous ground for appeal.  *Evitts*, 469 U.S. at 394.  Nor will counsel be deficient for failing to press a frivolous point.  Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner.  *Evitts*, 469 U.S. at 394.  A reasonable attorney has an obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful. *Strickland*, 466 U.S. at 690–91.

Petitioner complains that his appellate counsel failed to brief adequately on appeal the grounds raising ineffective assistance of trial counsel.  By necessity, he argues that, but for counsel's failure to brief those grounds in an adequate manner, there is a reasonable probability that he would have prevailed on appeal.[2]

This Court has already noted that the state court denied petitioner's claims for ineffective assistance of trial counsel, and has upheld those determinations herein.

In denying this claim on collateral review, the state trial court found that petitioner failed to prove the second *Strickland* prong:

---

[2]Petitioner's first direct appeal resulted in the abatement and remand of the appeal due to denial of counsel at the motion for new trial hearing.  *Davis v. State*, 228 S.W.3d 917 (Tex. App.– Waco 2007, no pet.).  In the second appeal, petitioner's conviction was affirmed.  *Davis v. State*, 276 S.W.3d 491 (Tex. App. – Waco 2008, pet. ref'd).  The state court also relied in part on the opinion affirming the murder conviction and life sentence of petitioner's co-defendant, Willie Davis, in *Davis v. State*, 2011 WL 322877 (Tex. App. – Waco 2011, pet. ref'd).

> 68.     Even if the items of ineffective assistance had been considered by the court of appeals on the merits, those same claims would have been overruled. *See Davis v. State*, 2011 WL 322877, *9–*10.  Thus, Applicant fails to prove that the outcome of the proceeding would have been different.  Moreover, Applicant is still able to present the claims of ineffective assistance in the instant application.  Therefore, he cannot show harm.

*Ex parte Davis*, pp. 532–33 (citation omitted).  The Texas Court of Criminal Appeals expressly relied on the trial court's findings and conclusions in denying habeas relief.  *Id*., at cover.

This Court has reviewed the record and finds no fault with the trial court's findings and determinations denying relief on this claim.  The state courts denied the numerous claims of ineffective assistance of trial counsel petitioner raised on collateral review, rulings reviewed and preserved in the instant proceeding.  Moreover, the court of appeals rejected petitioner's legal claims which formed the basis for his assertions of ineffective assistance of trial counsel, based on evidentiary rulings made in co-defendant's appeal. *See Davis v. State*, 2011 WL 322877 (Tex. App.–Waco 2007, no pet.).  In short, petitioner has not established that, but for appellate counsel's failure to adequately brief the ineffective assistance claims on direct appeal, there is a reasonable probability that petitioner would have prevailed on appeal.

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

*Conclusion*

Respondent's motion for summary judgment (Docket Entry No. 8) is GRANTED and this lawsuit is DISMISSED WITH PREJUDICE.  A certificate of appealability is DENIED.  Any and all pending motions are DENIED AS MOOT.

Signed at Houston, Texas, on December 11, 2013.

Gray H. Miller
United States District Judge